```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
CATLIN SYNDICATE 2003, as subrogee of
ANTHONY'S COAL FIRED PIZZA OF
BOHEMIA, LLC d/b/a ANTHONY COAL
FIRED PIZZA,
                    Plaintiff,


-against-                                    MEMORANDUM AND ORDER
                                             17-CV-2406 (JFB)(AYS)

TRADITIONAL AIR CONDITIONING,
INC., VISIBLE CONSTRUCTION CORP
and THOMAS WILLIAM CONSTRUCTION
OF NEW YORK LLC,

                    Defendant.
----------------------------------------------------------X
```

**ANNE Y. SHIELDS, United States Magistrate Judge:**

This is a subrogation action brought by an insurer that covered costs arising out of a fire that occurred at Anthony's Coal Fired Pizza ("Anthony's Pizza") on January 26, 2015 ("the Fire").

Before the Court is nonparty Merchants Mutual Insurance Company's ("Merchants") motion to quash a subpoena served upon it by Defendant Thomas William Construction of New York LLC ("TW"). See DE 32.

I.  BACKGROUND

Plaintiff Catlin Syndicate 2003 ("Catlin"), is subrogee of Anthony's Coal Fired Pizza ("Anthony's Pizza"). As stated in the complaint, the incident forming the basis of this action is a fire that occurred at Anthony's Pizza. Following the fire, Catlin made payments to its insured in the amount of $840,000.00. See Docket Entry ("DE") 1 ¶ 18. Catlin now seeks indemnification

of that payment from Traditional Air Conditioning, Inc. ("Traditional"), Visible Construction Corp ("Visible"), and Thomas Williams Construction of New York, LLC ("TW").

The complaint alleges that prior to the Fire, Defendant TW entered into an agreement with Anthony's Pizza for the installation of a coal fired pizza oven and all component parts, including the installation of the kitchen exhaust duct and wrap at the premises. DE 1 ¶ 9. TW subcontracted with Defendant Traditional for the installation of the kitchen exhaust duct and wrap. DE 1 ¶ 10. Traditional then hired Defendant Visible to install the kitchen exhaust duct and wrap. DE 1 ¶ 11.

On January 26, 2015, after the installation, a fire erupted in a combustible concealed space above the ceiling and in close proximity to the coal fired pizza oven and oven exhaust ductwork. DE 1 ¶ 12. The fire and smoke caused substantial damage to the premises. Catlin Syndicate, as the insurer for Anthony's Pizza, paid its insured $840,000 for the damage caused to the premises by the Fire. DE 1 ¶¶ 3, 18. Catlin claims that pursuant to its contract of insurance and applicable law, it is subrogated to the rights of Anthony's Pizza. DE 1 ¶ 19. Catlin alleges that the Fire was due to the Defendants' negligence, carelessness, and recklessness, and further asserts that Defendants breached their respective contracts and expressed and implied warranties. DE 1 ¶ 27. Catlin now seeks a judgment of $840,000.00 from the Defendants. DE 1 ¶ 18.

According to TW, the terms of the subcontract between TW and Traditional required Traditional to purchase insurance covering its contractual indemnity obligations to TW, and provide evidence of the required coverages before commencing work on the project. See DE 33 ¶ 5. Specifically, TW highlights paragraph 13 of the subcontract, which states Traditional's agreement to purchase insurance coverage naming TW, as well as the owner and construction manager, as additional insureds for both ongoing and completed operations. See Thomas

Williams Construction-Traditional Air Conditioning Subcontract, attached to Harris Cert, as Exhibit C ("Subcontract"), DE 33-5. On or about April 4, 2014, Cotgreave Insurance Agency, Inc. ("Cotgreave Insurance Agency") issued a certificate of insurance to TW, which identified Merchants as Traditional's commercial general liability insurer. See Certificate of Insurance, dated April 4, 2014, attached to Harris Cert, as Exhibit D; see also DE 33 ¶¶ 8-9.

The CGL section for "Coverages" on the certificate of insurance issued by Cotgreave Insurance Agency indicates that Merchants' policy included contractual liability and blanket additional insured coverage. See Certificate of Insurance, dated April 4, 2014, attached to Harris Cert, as Exhibit D. DE 33 ¶ 9. The "Description of Operations" on the certificate of insurance also indicated that Merchants' additional insured coverage applied to both ongoing and completed operations. See Certificate of Insurance, dated April 4, 2014, attached to Harris Cert, as Exhibit D. DE 33 ¶¶ 9-10.

After notification of the Anthony's Pizza loss, TW, through its own liability insurer, Colony Insurance Company ("Colony"), tendered the claim to Traditional and Merchants in accordance with the terms of the parties' subcontract. Id. ¶ 11. Colony requested Merchants to produce a copy of its insurance policy. Id. ¶ 12. More than five months later, Merchants denied the claim on the grounds that there was no proof that Traditional caused or contributed to the fire, and because the matter was not presently in suit. Id. ¶ 13; see also Letter from Darlene Ungaro, Claim Representative II, Merchants Insurance Group, to Karla Roberts, Claims Examiner, Colony Insurance Company, dated September 30, 2015, attached to Harris Cert, as Exhibit F; DE 33 ¶ 7. After the present action was commenced, TW, through Colony, again tendered the claim to Traditional and Merchants in accordance with the terms of the parties' subcontract. See Letter from Karla Roberts, Claims Examiner, Colony Insurance Company, to

Traditional Air Conditioning, Inc. and Merchants Mutual Insurance Company, dated September 15, 2017, attached to Harris Cert, as Exhibit G; DE 33 ¶ 15.

By letter dated September 18, 2017, Merchants rejected the claim, citing a portion of the endorsement with respect to additional insurance coverage. DE 33 ¶ 16. Specifically, the endorsement stated that the insurance does not apply to:

> 3. "Bodily injury", "property damage" or "personal and advertising injury" occurring after:
> (a) All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or
> (b) That portion of "your work", out of which the injury or damage arises, has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Relying on the terms in its policy, Merchants denied the claim on the basis that its insured had completed its work it was hired to do over a year ago, and such work had been put to its intended use. DE 33 ¶ 16. Merchants further denied TW's request for defense and indemnification on the basis that that there has been no finding that the loss was caused by negligence of Traditional. Id.

Thereafter, on October 11, 2017, TW served non-party Merchants with a subpoena seeking documents to resolve what coverage existed at the time of the Fire, and whether Traditional attempted to purchase the required insurance. DE 33 ¶¶ 18-19.

II. The Subpoena

The subpoena served by TW upon Merchants seeks:

1. All insurance policies issued by Merchants Mutual Insurance Company ("Merchants Mutual"), or any affiliate thereof, to Traditional. All insurance policies issued by Merchants Mutual Insurance Company and the ("Merchants Mutual"), or any affiliate

4

thereof, to Traditional Air Conditioning, Inc. ("Traditional Air Conditioning"), and/or Traditional Air Conditioning's predecessors, successors, assigns, and/or affiliated companies or persons, whether primary, umbrella or excess, including, but not limited to, Policy Nos. CMP-9140272 and CUP-9137950, for the period covering 2012 to the present.

2. All underwriting documents and underwriting files for the insurance policies responsive to Request No. 1 above.

3. All correspondence and e-mails relating to the negotiation, underwriting, binding, purchase and issuance of the insurance policies responsive to Request No. 1 above.

4. All Agency Bulletins issued by Merchants Insurance Group concerning the following endorsements: (1) ISO Form CG-2010 (07/04); (2) ISO Form CG-2037 (10/04); and (3) "New York - General Liability Complete Endorsement," MU-8958-0314.

5. All correspondence and e-mails between Merchants Mutual, and/or its employees and representatives, including, but not limited to, Sandra Foley and Darlene Ungaro, and any person or entity regarding: (1) the property damage claim that is the subject of this litigation; (2) this litigation; (3) the request for defense and indemnification and additional insured coverage made by Colony Insurance Company ("Colony") and its insured, Thomas William of New York, LLC ("Thomas William"), in connection with this litigation and the property damage claim that gave rise to this litigation; and (4) Merchants Mutual's refusal to defend and indemnify or provide additional insured coverage to Thomas William with respect to this litigation and the property damage claim that gave rise to this litigation.

6. All correspondence and e-mails between Merchants Mutual, and/or its employees and

representatives, including, but not limited to, Sandra Foley and Darlene Ungaro, and Cotgreave Insurance Agency, Inc. ("Cogreave [sic] Insurance Agency") regarding: (1) the property damage claim that is the subject of this litigation; (2) this litigation; (3) the request for defense and indemnification and additional insured coverage made by Colony and its insured, Thomas William, in connection with this litigation and the property damage claim that gave rise to this litigation; and (4) Merchants Mutual's refusal to defend and indemnify or provide additional insured coverage to Thomas William with respect to this litigation and the property damage claim that gave rise to this litigation.

7. All correspondence and e-mails between Merchants Mutual, and/or its employees and representatives, including, but not limited to Sandra Foley and Darlene Ungaro, and R.J. Fregenti Associates, Inc. ("R.J. Fregenti Associates") regarding: (1) the property damage claim that is the subject of this litigation; (2) this litigation; (3) the request for defense and indemnification and additional insured coverage made by Colony and its insured, Thomas William, in connection with this litigation and the property damage claim that gave rise to this litigation; and (4) Merchants Mutual's refusal to defend and indemnify or provide additional insured coverage to Thomas William with respect to this litigation and the property damage claim that gave rise to this litigation.

8. All documents relied upon by Darlene Ungaro in denying the request for defense and indemnification and additional insured coverage made by Colony, and its insured, Thomas William, in 2015 with respect to the property damage claim that is the subject of this litigation.

9. All documents relied upon by Sandra Foley in denying the request for defense and indemnification and additional insured coverage made by Colony, and its insured,

Thomas William, in 2017 with respect to the property damage claim that is the subject of this litigation.

10. All agency agreements between Merchants Mutual and Cotgreave Insurance Agency in effect during the period from 2012 to the present.

11. All agency agreements between Merchants Mutual and R.J. Fregenti Associates in effect during the period from 2012 to the present.

12. All documents which refer or relate to the scope of authority conferred upon Cotgreave Insurance Agency as an appointed agent of Merchants Mutual from 2012 to the present.

13. All documents which refer or relate to the scope of authority conferred upon R.J. Fregenti Associates as an appointed agent of Merchants Mutual from 2012 to the present.

14. All documents which refer or relate to Cotgreave Insurance Agency's authority to issue certificates of insurance pertaining to Merchants Mutual policies from 2012 to the present.

15. All documents which refer or relate to R.J. Fregenti Associates' authority to issue certificates of insurance pertaining to Merchants Mutual policies from 2012 to the present.

16. All documents which refer or relate to Cotgreave Insurance Agency's authority as appointed agent of Merchants Mutual to issue the attached certificate of insurance identifying Thomas William as an additional insured on Merchants Mutual Policy Nos. CMP-9140272 and CUP-9137950 issued to Traditional Air Conditioning for the March 1, 2014 to March 1, 2015 policy period.

17. All documents which refer or relate to R.J. Fregenti Associates' authority as appointed agent of Merchants Mutual to issue the attached certificate of insurance identifying

Thomas William as an additional insured on Merchants Mutual Policy Nos. CMP-9140272 and CUP-9137950 issued to Traditional Air Conditioning for the March 1, 2013 to March 1, 2014 policy period.

DISCUSSION

I. Legal Standards

Under Rule 45 of the Federal Rules of Civil Procedure, "[o]n timely motion, the issuing court must quash or modify a subpoena that ... requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iii)-(iv). "In response to a motion to quash a subpoena, '[t]he party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings.'" Libaire v. Kaplan, 760 F. Supp. 2d 288, 291 (E.D.N.Y. 2011) (citations omitted); accord Torcasio v. New Canaan Bd. of Educ., 2016 WL 312102, at *2 (D. Conn. 2016). Once relevance is demonstrated, "the party seeking to quash the subpoena bears the burden of demonstrating that the subpoena is overbroad, duplicative, or unduly burdensome." Libaire, 760 F. Supp. 2d at 291 (citations omitted). See John Wiley & Sons, Inc. v. Doe Nos. 1–30, 284 F.R.D. 185, 189 (S.D.N.Y. 2012) (burden on motion to quash is borne by the moving party).

The decision to grant or deny a motion to quash is discretionary. AP Links, LLC v. Russ, 299 F.R.D. 7, 11-12 (E.D.N.Y. 2014); see In re Subpoena Issued to Dennis Friedman, 350 F.3d 65, 68 (2d Cir. 2003). When exercising that discretion the Court is entitled to broad latitude to determine the scope of discovery and to manage the discovery process. See, e.g., EM Ltd. v. Republic of Argentina, 695 F.3d 201, 207 (2d Cir. 2012).

As to relevance, newly amended Rule 26(b)(1) of the Federal Rules of Civil Procedure

provides for discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). While "relevance" continues to be a broad concept, applying to matters that bears claims and defenses, courts must also analyze "proportionality" before ordering production of relevant information.

III. Analysis

I. Disposition of the Motion to Quash

Merchants argues that TW's subpoena must be quashed. It reasons that the demands represent an impermissible attempt to obtain pre-suit discovery, and that TW is seeking the underwriting file to determine whether grounds exist to implead or otherwise commence an action challenging Merchants' denial of coverage. Merchants avers that Defendant TW cannot meet its burden to establish that the documents are relevant and material to the allegations and claims as required by Rule 26(b)(1) of the Federal Rules of Civil Procedure. Merchants further argues that as the Subpoena acknowledges that Merchants disclaimed the coverage, Defendants must be in possession of whatever document was used to effectuate the denial and, therefore, needs nothing more from Merchants to determine whether it has the basis to bring a suit against Merchants. DE 32-7 at 9. Lastly, Merchants argues that TW's demands are unduly burdensome, and that the underwriting documents are confidential. Merchants contends that because it is defending Traditional, disclosure of a privilege log and/or the confidential documents may compromise Traditional's defense in the instant litigation. DE 32-7 at 5. Therefore, in the event

the Court does require such disclosure, Merchants requests the log and documents be submitted to the Court for in camera review.

In contrast, Defendant TW argues that the documents sought are relevant to its claims. It reasons that issues exist as to what coverage was available, and whether defendant Traditional attempted to purchase the required insurance. TW contends that evidence to resolve those issues is likely to be found in documents that are in the possession of Merchants, including (1) the policy, (2) the underwriting file, which will show what forms of insurance were applied for and what the broker sought to obtain as coverage, (3) the claims file, which will show pre-litigation inquiries made by Merchants as to what forms and types of insurance were applied for and existed, and (4) correspondence and other documents related to and bearing on these matters. DE 33 ¶ 19.

TW additionally avers that such discovery is necessary in light of the cross claims it asserted against Traditional for defense and indemnification. Specifically, TW argues that as Traditional filed an answer denying "each and every allegation," Traditional's obligation to defend and indemnify TW by purchasing a particular form of insurance is presently an issue before the Court by way of a pending crossclaim. Based on the pending cross claim, TW posits that such discovery cannot be considered to be pre-suit discovery. DE 33 ¶ 23. Finally, TW asks the Court to find that Merchant's failure to timely submit a privilege log constitutes a waiver of privilege.

    A.  <u>As to Whether the Subpoena seeks Impermissible Pre-Suit Discovery</u>

In analyzing whether the documents sought by the subpoena are permissible and/or relevant, the Court must determine how such documents are relevant to TW's claims or defenses. Accordingly, the Court will briefly address the claims and defenses that TW has asserted in this

action. As stated above, this is a subrogation action. "[S]ubrogation allows insurers to 'stand in the shoes' of their insured to seek indemnification by pursuing any claims that the insured may have had against third parties legally responsible for the loss." Allstate Ins. Co. v. Mazzola, 175 F.3d 255, 258 (2d Cir. 1999); see also Giambrone v. Meritplan Ins. Co., 2017 WL 2303980, at *5 (E.D.N.Y. 2017), adopted by, 2017 WL 2303507 (E.D.N.Y. 2017). As Catlin is standing in the shoes of Anthony's Pizza, it is entitled to indemnification from any party that is liable for the loss at Anthony's Pizza. Catlin, therefore, seeks indemnification from, inter alia, TW and Traditional based upon a theory that it was their negligence that caused the fire. In answering Catlin's claims, TW has asserted a crossclaim against its co-defendants, including Traditional. DE 26 at 10. TW's cross claim specifically asserts that the co-defendants "will be liable over jointly and severally to answering defendant and to fully indemnify and hold answering defendant harmless…." DE 33-4 at 11. In response, Traditional denied "each and every allegation contained in the cross-claims" of Defendant TW. DE 28.

In making a determination as to indemnification, the contracts between parties is especially relevant. That is because "[a] party is entitled to full contractual indemnification provided that the intention to indemnify can be clearly implied from the language and purposes of the entire agreement and the surrounding facts and circumstances." Drzewinski v. Atl. Scaffold & Ladder Co., 70 N.Y.2d 774, 777 (1987) (internal quotations omitted). Indeed, pursuant to New York law, "[t]he right to contractual indemnification depends upon the specific language of the contract. In the absence of a legal duty to indemnify, a contractual indemnification provision must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed." Alfaro v. 65 W. 13th Acquisition, LLC, 74 A.D.3d 1255, 904 N.Y.S.2d 205, 207 (2010) (citations omitted); see also Heimbach v. Metro. Transp. Auth.,

11

75 N.Y.2d 387, 553 N.Y.S.2d 653, 553 N.E.2d 242, 246 (1990); Roldan v. New York Univ., 916 N.Y.S.2d 162, 166 (2d Dep't 2011); Rodriguez v. City of New York, 2015 WL 4078618, at *4 (E.D.N.Y. 2015); In re Bridge Const. Servs. of Fla., Inc., 140 F. Supp. 3d 324, 331 (S.D.N.Y. 2015).

In the instant case, there is no dispute that TW entered into a subcontract with Traditional, in which Traditional agreed to purchase insurance coverage naming TW as an additional insured for both ongoing and completed operations. DE 33 ¶ 5; DE 33-5 ¶ 13. Nor is it disputed that the terms of indemnification were set forth in the parties' subcontract. DE 33 ¶ 6; DE 33-5 at 5-6. TW therefore contends that based upon the subcontract, Traditional is required to obtain coverage naming TW, and to indemnify TW for losses sustained due to ongoing and completed operations. Moreover, in New York a contractor may assert a claim or cross claim against a subcontractor who obtains a general liability policy naming the contractor but failing to procure the precise coverage mandated under the terms of the subcontract. Lima v. NAB Const. Corp., 873 N.Y.S.2d 141, 143 (2d Dep't 2009). Thus, as TW's defense includes cross claims against Traditional, documents establishing whether Traditional complied with the terms of the subcontract and procured the correct insurance coverage are relevant to TW's claims and/or defenses in this action.

In reviewing the requests made in the Subpoena, the Court finds only the insurance policy between Traditional and Merchants to be both relevant and permissible. The same cannot be said for the additional requests. Indeed, the other requests are impermissible pre-suit discovery. Such requests relate to Merchants' decision to insure Traditional, Merchants' decision of denial, and Merchants' authority in issuing coverage. Such discovery does not relate to the allegations and claims pertaining to TW's claims and or defenses against Traditional, i.e.,

whether there was adequate insurance in place between Traditional and Merchants. See Zoological Soc. of Buffalo, Inc. v. Carvedrock, LLC, 2013 WL 5652759, at *3 (W.D.N.Y. 2013) (finding that the only issue before court in declaratory judgment action is whether policy affords coverage so only information "which could possibly be relevant to this issue is the contracts between the [parties] and, should the [plaintiff] prevail in this action, the [] insurance policy currently defending the [plaintiff].").

### B. The Policy Is More Properly Obtained From Traditional

As articulated above, the Court finds that the insurance policy between Traditional and Merchants is both permissible and relevant discovery. However, as stated in the Federal Rules of Civil Procedure, courts must limit discovery if it "can be obtained from other sources that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(C)(i); see also Zoological Soc. of Buffalo, Inc. v. Carvedrock, LLC, 2013 WL 5652759, at *3 (W.D.N.Y. 2013); see also Travelers Indem. Co. v. Metro. Life Ins. Co., 228 F.R.D. 111, 114 (D. Conn. 2005) (noting that an insurance policy should be obtained directly from a party, rather than placing an undue burden on a non-party). This is especially true where the subpoenaed party is a non-party to the action. Corbett v. eHome Credit Corp., 2010 WL 3023870, at *3 (E.D.N.Y. 2010) (noting that particularly in demands made against nonparties, "[a] subpoena that pursues material with little apparent or likely relevance to the subject matter,. . . is likely to be quashed as unreasonable even where the burden of compliance would not be onerous") (citing Kirschner v. Klemons, 2005 WL 1214330, at *2 (S.D.N.Y. 2005)). Because the insurance policy could have been requested from Traditional throughout the regular course of discovery, the Court finds that requiring Merchants to produce it would be unduly burdensome. Zoological, 2013 WL 5652759, at *3.

The Court concludes that the Subpoena must be quashed as it requests documents that are either impermissible and irrelevant or unduly burdensome. In light of the foregoing, it is unnecessary to address issues of privilege and confidentiality.

## CONCLUSION

For the foregoing reasons, Merchants' motion to quash as set forth in Docket Entry [32] is granted.

Dated: Central Islip, New York
March 23, 2018

/s/ Anne Y. Shields
ANNE Y. SHIELDS
United States Magistrate Judge