UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
CATLIN SYNDICATE 2003, as subrogee of Anthony's Coal Fired Pizza of Bohemia, LLC, d/b/a Anthony Coal Fired Pizza,

Plaintiff,

-against-

TRADITIONAL AIR CONDITIONING, INC., A-H CONSTRUCTION, LLC d/b/a VISIBLE CONSTRUCTION CORP. and THOMAS WILLIAMS CONSTRUCTION OF NEW YORK LLC,

Defendants.
---------------------------------------------------------X

**MEMORANDUM & ORDER**
17-CV-2406 (DRH)

**APPEARANCES:**

**For Plaintiff:**
Cozin O'Connor
45 Broadway Atrium
16 Floor
New York, New York 10006
By: John B. Galligan, Esq.
Mark T. Mullen, Esq.

**For Defendant Traditional Air Conditioning Inc.**
Guararra & Zaitz
1185 Avenue of the Americas
18th Floor
New York, New York 10036
By: Michael M. Zaitz, Esq.
Michael Guararra, Esq.

**For Defendant A-H Construction, LLC d/b/a Visible Construction Corp.**
Silverson, Pareres & Lombardi, LLP
170 Hamilton Avenue, Suite 310
White Plains, NY 10601
By: Joseph T. Pareres, Esq.
Rachel H. Poritz, Esq.

**For Defendant Thomas Williams Construction of New York LLC**
Braff, Harriss & Sukoneck
570 W. Mt Pleasant Avenue
Livingston, New Jersey 07039
By: Brian C. Harris, Esq.
Willaim A. Goldstein, Esq.

**HURLEY, Senior District Judge:**

The purpose of this Memorandum is to address (1) the motion of plaintiff CATLIN SYNDICATE 2003 ("Catlin" or "Plaintiff"), as subrogee of Anthony's Coal Fired Pizza of Bohemia, LLC, d/b/a Anthony Coal Fired Pizza ("ACFP"), to lift the stay of nonarbitrable claims entered on June 18, 2018 and dismiss its claims against defendant A-H Construction d/b/a Visible Construction Corp (A-H/Visible), and (2) the cross-motion of defendant A-H/Visible for an order confirming the Final Arbitration Award, dated February 14, 2020, and dismissing the cross-claims asserted against it by co-defendants Traditional Air Conditioning Inc. ("Traditional") and Thomas Williams Construction Company of New York, LLC "TWC") (A-H/Visible, TWC, and Traditional collectively "Defendants"). For the reasons set forth below, the motion to lift the stay is granted and the cross-motion is granted to the extent of confirming the arbitration award, resulting in the dismissal of plaintiff's claims against A-H/Visible on the merits, but denied to the extent it seeks dismissal of the cross-claims.

## BACKGROUND

The background of this action is fully set out in the June 18, 2018 Memorandum & Order granting the motion to compel arbitration and staying the

balance of the proceeding pending arbitration.[1] It will be repeated here only to provide context to current motions.

## I. Construction of the ACFP Restaurant and the Fire

In June 2013, A-H/Visible entered into a contract with ACFP regarding the construction of the ACFP restaurant ("the Construction Contract"). Under that contract, which included an arbitration provision, A-H/Visible was to schedule, coordinate, and oversee the construction of the ACFP Restaurant. TWC was brought on as the general contractor for the construction of the ACFP Restaurant. TWC then subcontracted with Traditional to perform certain construction work at the ACFP Restaurant, including installation of the kitchen exhaust duct and wrap. The contract between TWC and Traditional neither includes an arbitration clause nor incorporates the arbitration provision in the Construction Contract. Thereafter, construction of the ACFP Restaurant was completed.

On the night of January 26, 2015, a fire broke out near the pizza oven and oven exhaust ductwork, causing substantial damage to the ACFP Restaurant and its equipment. As a result, Catlin, the property insurer, paid ACFP $840,000.00 for the damages sustained. Catlin then became subrogated to the rights of ACFP to the extent of that payment under the terms of the insurance policy.

## II. This Action

Catlin commenced this action in April 2017, asserting causes of against Defendants for negligence, breach of contract, and breach of warranty. Defendants

[1] That decision, issued by Judge Bianco before his elevation to the Second Circuit, is reported at 2018 WL 3040375.

separately asserted cross-claims against the respective co-defendants for contribution and and/or indemnification.

A-H/Visible thereafter moved to compel arbitration and to stay this action. Then District Judge Bianco granted the motion to compel arbitration of Plaintiff's claims against A-H/Visible and stayed this case pending resolution of the arbitration. *See Catlin Syndicate 2003 v. Traditional Air Conditioning, Inc.*, 2018 WL 3040375 (E.D.N.Y. June 18, 2018).

## III. The Arbitration and Arbitration Award

After evidentiary hearings and post-hearing submissions by Catlin and A-H/Visible, the only two parties to the arbitration,[2] the arbitrator issued a reasoned award, dated February 14, 2020 ("the Award"). In the Award, the arbitrator summarized the undisputed facts and relevant provision of the Construction Contract, set forth the parties' contentions and summarized the testimony of witnesses. After addressing two "easily resolved" issues, the substance of which are not relevant for present purposes, the arbitrator turned to the "key" issue of whether A-H/Visible was liable to Catlin and found it was not. He wrote:

> [T]he overwhelming weight of the evidence and the credible expert testimony established by a preponderance of the evidence that Traditional' s faulty installation caused the fire. However, since no witness from ACFP testified who had actual knowledge of ACFP's expectations regarding A-H's performance as the Construction Contractor on the Project, and no competent expert testimony was offered regarding the specific standard of care A-H was required to meet, it is difficult to assess whether A-H breached the Agreement (or otherwise independently acted negligently) by not informing ACFP that Traditional' s work was defective. A-H asserts it is not a specialty

[2] As set forth in the Award neither TWC nor Traditional were parties to the arbitration and neither testified as non-parties.

> contractor or a general contractor and therefore it cannot be held to the higher standard of care that would require it to detect all construction deficiencies involving Traditional's HVAC work. On the other hand, as Catlin points out, it is crystal-clear the Agreement itself requires, without limitation, that A-H monitor and inspect Traditional's work to determine it is defect-free. However, as it turns out, due to the existence of the last sentence in Section 9.3 of the Agreement, both A-H's position on the applicable standard of care and Catlin's argument concerning the contractual language are moot.
>
> The last sentence in Section 9.3 is clear and unambiguous and, simply put, it exculpates A-H from any responsibility for losses that might arise, at least in part, due to A-H's failure to detect and report nonconforming work performed by Traditional or other Trade Contractors. Granted, one could argue, and Catlin does, that such a finding disregards and is inconsistent with the myriad other sections in the Agreement that require A-H to observe and inspect Traditional's work and to inform the Owner about any defects, However, the two provisions are not necessarily inconsistent. There is no doubt that A-H was contractually required to observe and inspect the work of the Trade Contractors. Mr. Holbrooke testifies A-H did just that and Catlin offered no evidence to the contrary. Based upon my finding that Traditional's faulty work was the cause of the fire, it is axiomatic that the losses for which Catlin seeks to recover were caused by a Trade Contractor. The last sentence in Section 9.3 expressly and unequivocally exculpates A-H from having to pay damages to ACFP (or to its subrogee Catlin) for any losses caused by the Trade Contractors. Although it was not a primary factor in my reasoning, the very existence of this exculpatory language (which, in my experience, is atypical) tends to support A-H's assertion that the bargained for standard of care was something less than what would it would otherwise be in the more common project delivery system where an owner frequently hires a sole General Contractor to oversee all of the work.

(DE 61-1 at 9-10.)

In view of the foregoing, the arbitrator found in favor of A-H/Visible and denied Catlin's claims in toto.

## IV. The Instant Motions

After the issuance of the Arbitration Award, Catlin moved (1) to lift the stay entered in 2018 so that it may proceed with it claims against Traditional and TWC and (2) for dismissal of its claims against A-H/Visible as "[t]he[arbitrator's] rulings in favor of A-H/Visible preclude Catlin from proceeding herein against that defendant." (DE 61-2 at 3.) A-H/Visible then cross-moved for an order confirming the final arbitration award, directing the entry of judgment in favor of A-H/Visible against Catlin, and dismissing the cross-claims of Traditional and TWC. Traditional and TWC oppose the motion and cross-motion to the extent they seek dismissal of their cross-claims and ask that their cross-claims against A-H/Visible be deemed counterclaims against A-H/Visible.

## DISCUSSION

## I. Confirmation of Arbitration Award

### A. Applicable Standard

"It is well established that courts must grant an [arbitrator's] decision great deference." *Defuerco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003); *Trs. of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension & Welfare Funds v. HVH Enter. Corp.*, 2014 WL 923350, at *4 (E.D.N.Y. Mar. 10, 2014); *see also Nat'l Football League Players Ass'n v. Nat'l Football League Mgmt. Council*, 523 F. App'x 756, 760 (2d. Cir. 2013) (finding "the FAA requires district courts to accord significant deference to arbitrators' decisions"). "This deference promotes the twin goals of arbitration,

namely settling disputes efficiently and avoiding long and expensive litigation.*"* *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 103 (2d Cir. 2013) (internal quotation marks omitted). Confirmation of an arbitration award is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court . . . and the court must grant the award unless the award is vacated, modified or corrected." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (internal quotation marks omitted). Thus, "the burden of proof necessary to avoid confirmation of an arbitration award is very high and a district court will enforce the award as long as there is a barely colorable justification for the outcome reached." *Kolel,* 729 F.3d at 103-04 (internal quotation marks omitted); *accord D.H. Blair*, 462 F.3d at 110 ("[T]he award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case.") ("Only a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm the award.") (internal quotation marks and citation omitted).

**B. The Award is Confirmed**

Here, the Arbitrator summarized the evidence presented and issued a reasoned decision in support of his determination of the issues presented to him. Indeed, none of the parties argue that the award should be vacated or modified and there is no evidence that the arbitration's decision was unlawful, arbitrary, or in excess of the arbitrator's powers so as to warrant such a conclusion. *See generally In re Arbitration Between General Sec. Nat. Ins. Co. and AequiCap Program*

*Administrators,* 785 F. Supp. 2d 411, 417 (S.D.N.Y. Apr. 29, 2011) (quoting 9 U.S.C. § 10(a)). Accordingly, the Arbitration Award is confirmed and in accordance therewith Catlin's claims against A-H/Visible are dismissed with prejudice.

A-H/Visible also seeks entry of a judgment dismissing the claims of Catlin. Such a judgment would be a partial judgment as all claims against all parties have not been determined. A court may enter partial final judgment under Rule 54(b) if "(1) there are multiple claims or parties; (2) at least one claim or the rights and liabilities of at least one party has been finally determined; and (3) the court makes an 'express determination that there is no just reason for delay.' " *Acumen Re Mgmt. Corp. v. Gen. Sec. Nat'l Ins. Co.*, 769 F.3d 135, 140 (2d Cir. 2014) (brackets omitted) (quoting Fed. R. Civ. P. 54(b)). Nevertheless, the Second Circuit has instructed that this authority "be exercised sparingly[,]" *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 629 (2d Cir. 1991), cautioning that "the district court generally should not grant a Rule 54(b) [motion] if the same or closely related issues remain to be litigated," *Novick v. AXA Network, LLC*, 642 F.3d 304, 311 (2d Cir. 2011) (internal quotation marks omitted). When determining if there is "no just reason for delay," a district court may consider "whether the claims under review [are] separable from the others remaining to be adjudicated" and whether entering final judgment as to some claims would force an appellate court to review the same claims more than once. *Curtiss-Wright Corp. v. Gen. Elec. Co.,* 446 U.S. 1, 8 (1980). Moreover, a district court should enter a partial final judgment "only when there exists some danger of hardship or injustice through delay which would be alleviated by

immediate appeal." *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 445 (2d Cir. 1985) (internal quotation marks omitted). The decision is "left to the sound judicial discretion of the district court." *Curtiss-Wright Corp.,* 446 U.S. at 8 (internal quotation marks omitted). As none of the foregoing factors are addressed by A-H/Visible, the application for entry of judgment is denied without prejudice.

## II. The Stay of this Action

As set forth in the June 18, 2018 Order, this action was stayed "pending resolution of the arbitration." 2018 WL 3040375 at *8. The arbitration proceeding having been completed, the unopposed motion to lift the stay of this action is granted.

## III. The Counterclaims of Traditional and TWC

In its opening brief, A-H/Visible asserts two arguments in support of its motion to dismiss the counterclaims of Traditional and TWC.[3] The first argument is that as the arbitration was resolved in favor of A-H/ Visible, i.e., that it is not liable to Catlin, Traditional and TWC are precluded from seeking contribution and indemnity from A-H/Visible. The second argument is premised on N.Y. General Obligations Law 15-108. Each will be addressed in turn.

[3] To the extent that A-H/Visible raises new arguments in its reply brief, the Court will not consider them. *See Pettaway v. National Recovery Solutions, LLC*, 955 F.3d 299, 305 n.2 (2d Cir. 2020 )(argument raised for the first time in reply was waived); *Fisher v. Kansas*, 487 F. Supp. 2d 270 (E.D.N.Y. 2007), *aff'd*, 288 F. App'x 721 (2d Cir. 2008).

## A. Whether the Arbitration Award Precludes the Counterclaims

According to A-H/Visible, as the final arbitration award "decided that A-H/Visible was not liable under a theory of breach of contract, breach of warranty or negligence . . . [t]his finding must be deemed collateral estoppel in favor of A-H/Visible against the cross-claims of Traditional and TWC because they involve the same issues that were raised in the arbitration proceeding." (DE 63-1 at 8[4].) The argument is without any merit.

Preliminarily, the Court notes that although it asserts the doctrine of collateral estoppel, A-H/Visible fails to cite a single case either setting forth the relevant factors with respect to that doctrine or supporting its position that collateral estoppel applies. (*See* DE 63-1 at pp. 6-8.) On this basis alone, the Court could reject A-H/Visible's argument.

"Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007) (citations omitted*); accord Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 94 (2d Cir. 2005). "The party seeking the benefit of collateral estoppel bears the burden of proving the identity of the issues, while the party challenging its application bears the burden of showing that he or she did not have

[4] The reference to the page is that generated by ECF as the A-H/Visible's brief itself does not contain any page numbers.

a full and fair opportunity to adjudicate the claims involving those issues." *Khandhar v. Elfenbein*, 943 F.2d 244, 247 (2d Cir.1991) (citing *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455, 482 N.E.2d 63, 67, 492 N.Y.S.2d 584 (1985)).

The record in this case is clear that neither Traditional nor TWC have had a full and fair opportunity to litigate the issues involved in this case. Neither were a party to the arbitration. Indeed, absent from the arbitration was any participation - even as witnesses - by Traditional and TWC. Their absence from the arbitration is particularly important given that the arbitrator's finding that A-H/Visible was not liable was based on his finding that the cause of the fire was Traditional's faulty work. In sum, collateral estoppel provides no basis upon which to dismiss the counterclaims against A-H/Visible.[5]

**B. N.Y. General Obligations Law 15-108 and the Counterclaims**

The second argument asserted by A-H/Visible in support of dismissal of the counterclaims is premised upon N.Y General Obligations Law 15-108, which provides:

> (a) Effect of release of or covenant not to sue tortfeasors. When a release or a covenant not to sue or not to enforce a judgment is given to one of two or more persons liable or claimed to be liable in tort for the same injury, or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms expressly so provide, but it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the

[5] The Court notes parenthetically its conclusion is consistent with Judge Bianco June 2018 decision wherein he wrote "[D]efendants' counterclaims will not be impacted by the arbitration given that Traditional Air and [TWC] cannot be compelled to arbitrate." 2018 WL 3040375 at n. 7 (citing *Hartford Accident & Indem. Co. v. Columbia Cas. Co.,* 98 F. Supp. 2d 251, 255 (D. Conn. 2000).

> consideration paid for it, or in the amount of the released tortfeasor's equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest.
> (b) Release of tortfeasor. A release given in good faith by the injured person to one tortfeasor as provided in subdivision (a) relieves him from liability to any other person for contribution as provided in article fourteen of the civil practice law and rules.
> (c) Waiver of contribution. A tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person.
> (d) Releases and covenants within the scope of this section. A release or a covenant not to sue between a plaintiff or claimant and a person who is liable or claimed to be liable in tort shall be deemed a release or covenant for the purposes of this section only if:
> (1) the plaintiff or claimant receives, as part of the agreement, monetary consideration greater than one dollar;
> (2) the release or covenant completely or substantially terminates the dispute between the plaintiff or claimant and the person who was claimed to be liable; and
> (3) such release or covenant is provided prior to entry of judgment.

N.Y. Gen'l Oblig. Law § 15-108.

Without citations to any cases, A-H Visible maintains that "[t]he legal impact of the Final Arbitration Award is that A-H/Visible is now a 'released tortfeasor" with respect to the Catlin causes of action" and "based on a fair reading of [GOL § 15-108(b)] all of the cross-claims asserted by Traditional and TWC against A-H Visible must be released . . . ." (DE 71 at 7.) The Court rejects these arguments in toto for several reasons.

First, there is the absence of any cited caselaw to support that an arbitration award should be considered a release. In fact, subsection (d), unreferenced by A-H/Visible, sets forth the requirements for a release within the section. One of those requirements is that the "the plaintiff or claimant receives, as part of the agreement, monetary consideration greater than one dollar." Here there is nothing

in the record to support that Catlin received any monetary consideration from A-H/Visible.

Second, and more fundamentally, A-H/Visible's argument is antithetical to the purpose of the statute – the promotion of out-of-court *settlements*. *See Mathis v. United Homes, LLC*, 607 F.Supp.2d 411, 431–32 (E.D.N.Y.,2009) ("The New York State] Legislature recognized that contribution rights [sometimes had] the unintended consequence of inhibiting out-of-court settlements in multi-party actions. Thus, the legislature enacted § 15–108 to limit non-settling defendants' (and/or third parties') rights to recover contribution from settling defendants. The primary purpose of section 15–108, therefore, is to promote *settlements* in multi-party cases by permitting a settling defendant to buy] his peace." (internal quotations marks and citations omitted) (emphasis added); a*ccord Restivo v. Hessemann*, 846 F.3d 547, 585 (2d Cir. 2017) ("New York General Obligation Law Section 15–108(a) has 'two purposes: first, to encourage settlements, and, second, to ensure that nonsettling tortfeasors are not required to bear more than their equitable share of liability.'"( quoting *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 331 (2d Cir. 1987); *Conrad v. Beck–Turek, Ltd.,* 891 F. Supp. 962, 965–66 (S.D.N.Y.1995) (Section 15–108 "extinguishes any claim for contribution against the *settling* tortfeasor.") (emphasis added); *Minpeco, S.A. v. Conticommodity Services, Inc.*, 677 F. Supp. 151, 154 (S.D.N.Y. 1988) ("One of, if not the major purpose of [§ 15–108] [is] to encourage *settlement* between plaintiffs and defendants. . . .") (emphasis added).

A-H/Visible's motion to dismiss the counterclaims asserted by Traditional and TWC is denied.

**CONCLUSION**

For the reasons set forth above, the stay of this action is lifted, the arbitration award is confirmed, resulting in the dismissal of Catlin's claims against A-H/Visible, and the cross-motion to dismiss the counterclaims of Traditional and TWC against A-H /Visible is denied.

**SO ORDERED.**

Dated: Central Islip, New York
September 29, 2020

s/ Denis R. Hurley
Denis R. Hurley
United States District Judge